

**DEPARTMENT OF THE AIR FORCE**
**366TH AEROMEDICAL-DENTAL SQUADRON (ACC)**
**MOUNTAIN HOME AIR FORCE BASE, IDAHO**

15 June '01

MEMORANDUM FOR 366 WING IG/LT COL WOJAHN

FROM: 2Lt Marcia L. Madden

SUBJECT: Abuse and Unfair Treatment in the Workplace

1. I am making the following allegations: abuse of authority and unfair treatment against me by certain named individuals as a result of a protected communication that I had with Wing IG and MEO/Social Actions office, and unlawful command influence.

2. On 25 May '01, I obtained a performance feedback and evaluation of work performance from Capt. David Race, my current supervisor. I requested an evaluation in April '01 when I requested a change in supervisor from Capt. Charlotte Leader to Capt. David Race. I have been working with Capt. Race since November 2000.

3. When I obtained the performance feedback worksheet on 25 May '01, Capt. Race did not have time to review the worksheet with me. He informed me that he would review it with me at a later time because I was "intruding on his time". I signed feedback, informed and reviewed it with my military defense counsel. This occurred three days before an adverse hearing action, which begun on 29 May and ended on 31 May '01.

4. On 26 May '01, my military defense counsel informed me that Capt. David Race presented a copy of my performance feedback worksheet to Capt. John Terra, hospital legal advisor and prosecutor in my case. On May 27, a patient complaint letter supplementing the feedback worksheet including attachments of the patient's cholesterol results. The letter was addressed to Capt. David Race and issued to Capt. John Terra.

5. Upon my return to work on 01 June '01 following the hearing action, I asked Capt. Race to review feedback report with me prior to my taking on same task which he told me to continue doing without first going over concerns that warranted a patient complaint letter. I also had some concerns because there was erroneous information and very negative ratings of my performance. Capt. Race did not make the time to review the performance feedback with me on 01 June '01. I informed Lt Col Armour of my concerns when she came down to the clinic area. She set an appointment time for Capt. Race and I to meet in her office at app. 1330. We spoke for about 45 minutes and we (Capt. Race and I) decided to meet Monday morning (04 June '01) to review the performance feedback worksheet.

6. On 04 June '01 Capt. Race again did not make time to review worksheet with me in the afternoon as he stated. When I went to his work area (Beneficiary services) to find him, I was told that he had left the hospital building and may not return prior to end of shift. I continued to do taskings given to me by both Capt. Murphy and Capt. Cook. I mailed out letters to all female patients with overdue or no noted pap smears and mammograms for purple team and silver team.

7. On 05 June '01, I made it my priority to locate and speak with Capt Race. When I found him at approximately 0800; he was speaking with Dr. Ball. He informed me at that time that we would meet at 0900 am that morning. We met in his office and I clearly stated my concerns regarding erroneous information on the performance feedback worksheet of which I was rated poorly on. For example, one of my biggest concerns was listed in bullet #1 where Capt. Race stated that I developed a database for all cholesterol results and erroneous results were sent to patient. As a result of laboratory values for cholesterol being interchanged during printout, the database was discontinued. That accusation was false because I did not created a database for cholesterol results. Capt. Race issued printouts of these patients' lab results to me for mailing.

8. Capt. David Race changed this bullet and stated that the MTF developed that database and it was discontinued due to it not performing correctly. Prior to Capt. Race making these changes, I informed him that I would like the original back as I had highlighted my concerns and wanted to compare the changes made. He wrote on my original copy and transcribed changes to his saved copy on computer.

9. When Capt. Race was finished with my performance feedback, he ripped and torn my original copy in half. Before he went any further, I told him that I desired to have my copy back but he stated, "it's too late and besides I was going to get the original back...meaning a different version of the original with some slight changes that he had saved on his computer. I signed the new version and left his office that day with total disbelief.

10. This is just one example of how Capt. Race and others have abused their authority in their supervision of me. For example, Capt. Race, on several occasions have stated the he "owned me" and verbalized to Capt. Cheryl Gentile on a monthly basis that he "did not want me in his office" as she testified to in the hearing action. Capt. Gentile was challenged for cause due to the vast influence and work relationship that she has with the commander and each witness involved in my case. In addition, Capt. Gentile was tasked by Lt Col Mary Armour to be and was the president of the hearing committee.

11. During my orientation period in the 366 MDG/Emergency Room (Feb '00-August'00), I also experienced that preceptors and supervisors abused their authority during my training. Capt. Michael McGann (both sponsor and supervisor), Capt. Carlito Enriquez, and 1Lt Dianne Stroble did not respect me as an individual human being and black female nurse. Specific details were provided in my MEO/Social Actions Complaint. One example, of abuse of authority that was noted during the adverse hearing action from 29 May '01 to 31 May'01 is alleged against Lt. Diane Stroble. Over a period

of orientation with her from Apr '00 to June '00, Lt. Stroble altered at least two memorandums that she issued to me. I was given a different version of the memorandum that she issued to the OIC/Capt. Michael McGann. In addition, there were numerous other memorandums that she drafted and also obtained from some of the enlisted members with whom I worked that was given to the Capt. McGann and were never made known to me. This secretive communication between my preceptors, supervisor, and other staff members prevented me from progressing in the workplace and hindered my ability to build a good trusting relationship with my peers, even to the present day.

12. The abuse of authority continues during my training with Capt. Joanne Murphy and Capt. Diane Stroble, Capt. Brenda Cook at the 366 MDG/ Family Care Unit (August '00-Nov '00) and Clinic (Nov'00-present). I received unfair treatment from these individuals and individual enlisted members as a result of a protected communication made with the MEO and the Wing IG. These are the following examples:
- Increased workload: In May' 01, I was tasked by Capt. Brenda Cook to call individual patients (active duty and family members). I was to first look up phone numbers and addresses via CHCS and write out on PHA report to file in these patients charts. When I had completed the task, Capt. Cook tasked me again on 16 May-17 May'01 to call these patients and remind them to come 15 minutes earlier to their appointment time. Capt. Cook wanted me to mail out reminder HEAR survey letters to all the patients that I could not locate via telephone. Immediately upon my return to work from the hearing committee action, Capt. Brenda Cook and Capt. Joanne Murphy both tasked me to send out reminder letters for each of their individual teams. During the week of 04 June 01, I mailed out letters to patients with overdue pap smears for the purple team as tasked by Capt. Cook. When these letters are returned due to change of address, they are returned to me and I have to re-track, by either calling the AD spouse's work extension to find out correct address and/ or correct phone number.
- I also mailed out letters to patients with overdue pap smears and mammograms for the silver team clinic as tasked by Capt. Murphy. While I was working on these tasks, other individuals came to me, one at a time and asked me to do other tasks for them, such as mailing cholesterol results and following up with scheduled appointments for the cholesterol classes for the month.
- Capt. McGuffey, Lt. Oakes, P.A. Freely all gave me cholesterol results to mail out to their patients but not in groups but individually, one printout sheet at a time. Even when these individuals are aware that I am already tasked to do something else, they continue to overwhelm and pour more work on me. As my duty title was changed to nurse, data analyst by Lt Col Armour; I am expected to do all these tasks consistent with the specification in my notice of removal from patient care. These duties that I can perform include review of laboratory values, data entry/disease management, scheduling patients for counseling and history review, and patients interviews.
- However, others who are not in my chain of command and besides my supervisor continue to task me to do other things including supply/stocking binders and filing in the records room for all the clinics/team patients. When I find myself not busy, I gladly go and help the individuals in the records room as before the time of the

JCAHO visit and reviewed hundreds of patient charts many months prior to that. I consider myself a hard, helpful worker but I do not want to be taken advantage of by my peers. I also do not want to be treated like a child, as my supervisor, Capt. Race had stated and documented about my needing constant supervision. Capt Race also verbalized to me "he wanted me to do whatever the PCO nurses wanted me to do without question".

- Demeaning and Hostile Environment: Ex. Staff meeting on 07 June '01—During the meet, we all have to sign the attendance sheet. When the sheet is being passed around, the individual(s) closest to me bypassed me as if I do not exit. Also during the meet, there was a recall roster that contained all the names of individual people working in the clinics—(green, purple, silver, pco), I was not listed. I brought this to the attention of Maj. Kerry Van Orden and Capt. Race because I wanted to be updated on the recall roster or whatever list they had. At the end of the meeting, Maj. VanOrden called for all the nurses to stay behind. I am a nurse but after discussing the roster sheet with him, he said that I was required to stay on or be there like all the other nurses involved in the clinic area.
- Other examples of the hostile, loud, mocking, and demeaning work environment that I must endure on a daily basis is as follows. On 08 June '01, (1445) Sgt. Critizer in green team clinic…joking about individual outside of my office door…"he was a black panther, a racist!" (1500), Capt McGuffey…in company of Sgt. Critizer, Lt. Oakes, Capt. Keefe…making some more comments outside/halfway in doorway of my office…Capt. McGuffey, "It's too late for Prozac."
- On 12 June '01 (0805)…Capt. Murphy tasked me to go over to records room and help with filing of paperwork. She specifically told me to ask Amn. Cross to tell me or assign me what she wanted me to work on. I asked Capt. Murphy if she could write down the list of orders that she wanted for me to carry out herself. She again told me to go over and ask Amn. Cross and if I have any questions, I can come back over and ask her. (0815)…Amn. Cross seems confused as to what she was to ask me to do, she asks me to wait 10 minutes before she could find exactly what she wanted me to help out with. (0830) I return to records room, as I waited, I decided to go back over to Capt. Murphy's office for clarification. (0835)…Capt. Murphy walks me over to our clinic supply room and not back to the records room. She explains to me that she wants me to stock two binders, one with patient education handouts (1-276) and the other with medication handout (1-99) sheets. She wanted to put one original in the binder and ensure that there are five copies of each original left, write down what was missing, etc. (0835)…Outside of Capt. Murphy's office, before Capt. Murphy brings me to the supply room…Capt. Cook, "Are you finished with the HEAR surveys?" I responded, "yes, ma'am and I had returned them to you yesterday (11 June '01). (0845)…Capt. Murphy brings me over to the records room and asks Amn. Cross, "Where is that huge pile thing that needs to be filed?" Then Capt. Murphy says to me, "when you are finished with the patient education and medication sheets, come back over to the records room and help Amn. Cross with the filing!"…(0920) Began the stocking of the binders in back supply room. (0930)…heavy laughter in the hallway…(0955)…Spoke with Lt Col

Wojahn/Wing IG. Made appointment at 1.pm. (1040)...Laughter continues, "ha, ha, ha, ha". (1050)...stepped out of supply room for approximately 2-3 min., upon return, the door is locked, the lights are turned off, and boxes are stocked up high in front of the file cabinet that I was working out of. (1115)...Lt. Oakes, "you think it was bad now, give it a couple more weeks". (1120)...Capt. Stroble in hallway, "Bummer". (1130)...A few enlisted member, slamming boxes down as I pass them by in the hallway. (1145)...Capt. David Race sent me an email of some additional task or utilization management project that he had for me. (1200)...Eating lunch in my office. Other enlisted members slamming doors close to my office room and making other unfriendly gestures/noises. Had to close door. (1245)...Left for appointment with Lt MSgt/MSgt Edeker at 1 p.m. (1615)...Returned to hospital. In office, checking email. (1634)...Sgt. Critizer...yawning as he walked pass my office door, "Good God, it's like I've worked all day long or something". (1640)...Went home for the day.

13. On 18 Jan '01, Lt Col Mary S. Armour was issued me a memorandum for a mental health evaluation. The order for a mental health evaluation that was issued to me by Lt Col Mary S. Armour on 18 Jan '01 was not done in my best interest. Lt Col Armour has exhibited unlawful command influence in issuing this order and in other situations involving my privileges as a nurse. Lt Col Armour stated that she was doing this in order to get more information about my learning abilities and aptitude testing including my personality type. She further "stated that she would help her in the board proceedings but would not include the evaluation did not verify any of her requests." Lt Col Armour had spoken with the psychiatrist, Capt. Blomquist, now known as Capt. Wilson prior to my appointment on 11 Jan '01 with the proposed disposition of "separation" as the action being requested. She also stated that through the officer professional development interview that took place, "I had stated that I had outstanding bills which have stressed me".

14. Lt Col Armour had also wanted Capt. Blomquist to clarify my thoughts on the peer review action that conducted 10 days following my notification on 09 Jan'01 of the peer review action. The evaluation did verify that I did have some occupational problems based on the hostile work environment, no clinical or personality disorders. In addition, Capt. Blomquist did not recommend separation but felt that it was in my best interest to cross-train into a different career. Prior to the mental health evaluation on 25 Jan'01 and 31 Jan '01 and not until the time of the hearing on 29 May'01, I was never issued any memorandums on the peer review findings and/or recommendations. During my inquiries to Lt Col Armour of who the appointed board members consisted before and after the peer review action, I did not find out until the time of the hearing on 29 May '01. The next memorandum that I received was on 08 Mar '01-- " Notice of Proposed of Revocation of Clinical Practice" and my right to request a hearing committee review. Note: On 18 Dec '01, I was tested at 0800 a.m. for nursing service fundamentals examination at the base education center. As part of my PME and core training requirement, I completed this prior to my annual leave. When I was notified of my passing the examination, I issued a copy of the testing card certificate to Lt Col Armour. I have not seen an update of my military training via verification of military experience

and training or PC-III database. I was not aware that the memorandum was drafted on 18 Dec '01 (prior to my annual leave request from 20 Dec '00 to 05 Jan '01) and never issued to me at that time was never discussed. However, it was issued to me on 18 Jan'01 upon my return from leave vacation. Another example of unlawful command influence is as follows: Prior to the hearing committee action, I made several requests for character reference letters. I asked my previous supervisor, Capt. Leader and other individuals in the 366 Medical Group, doctor and enlisted members. In this situation, Lt Col Armour ordered these individuals not to issue me any character reference letters. Thus, when I asked Capt. Charlotte Leader to provide me with a letter to supplement my OPR appeal documentation, Capt. Leader informed me that Lt Col Armour specifically instructed her not to issue me any additional letters. In fact, Capt. Leader noted that I was fortunate to have received one character reference letter from her on 28 March '01 just prior to Lt Col Armour issuing her the new order. I was unable to obtain the other letters that I requested from other individual medical group members with whom I had worked with.

15. I would like the following allegations of abuse of authority, unfair treatment in the workplace, and unlawful command influence thoroughly investigated by the inspector general of the 366th Wing/IG office, Mountain Home AFB. I will seek additional avenues for help if this problem is not resolved and/or if I continue to experience these same issues during the remainder of my assignment here at the 366th Medical Group.

16. This type of unfair treatment and work conditions has greatly affected my career and threatens my livelihood. It has also has hindered my ability to progress in the workplace and build good trusting relationships with my peers.

17. Thank you very much for your time, patience, and genuine concern and involvement in this matter.

*Marcia L Madden*
Marcia. L. Madden, 2Lt, USAF, NC
366th Medical Operations Squadron